USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 8/14/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DIANE HARRELL, Individually and as Administratrix of the Estate of Samuel D. Harrell, III, Deceased

Plaintiff,

v.

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION ("DOCCS"), et al.,

Defendants.

---

No. 15-CV-7065 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Diane Harrell, proceeding individually and as administratrix of the estate of her late husband Samuel D. Harrell, III ("Harrell"), brings this action for his wrongful death while incarcerated at Fishkill Correctional Facility. The Defendants consist of various New York State agencies and their employees (collectively the "State Defendants") and the New York State Correctional Officers & Benevolent Association, Inc., a union representing correction officers in New York State, and its agents and employees (collectively the "NYSCOPBA Defendants"). Before the Court is the NYSCOPBA Defendants' motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

## BACKGROUND[1]

The factual background of this case is set forth in detail in the Court's opinion resolving the State Defendants' motion to dismiss, and the Court assumes the parties' familiarity with it. Here, the Court briefly recounts only those facts that are necessary to resolve the instant motion.

On April 21, 2015, Harrell suffered a mental health episode at Fishkill Correctional Facility and announced that he was leaving the facility. Numerous Fishkill correction officers (the "Fishkill Officers")[2] allegedly responded by tackling him to the ground and beating him, resulting in his death. To cover up their actions, Plaintiff claims, the Fishkill Officers falsely reported to the hospital where Harrell was taken that he had overdosed, intimidated witnesses with threats of violence, and retaliated against witnesses, both physically and through the use of solitary confinement. The officers allegedly called witnesses who spoke out about the incident "Nigger lovers" and "Rats." Am. Compl. ¶ 115. The Orange County Medical Examiner determined that Harrell's death was a homicide caused by a physical altercation with correction officers.

Following Harrell's death, the Amended Complaint alleges, NYSCOPBA agents "conferred with the Fishkill Officers and received incriminating admissions of criminal behavior," and then "suppressed [that information] and adopted and orchestrated an affirmative strategy of obstruction and falsification." *Id.* ¶ 110. This purported strategy of obstruction involved at least two specific acts. First, a union spokesperson informed the *Poughkeepsie Journal* that Harrell had assaulted correction officers and that "several officers were needed to restrain Harrell after the assault." *Id.* ¶ 108. Second, NYSCOPBA purportedly distributed a flier

---

[1] The following facts, taken from the Amended Complaint, are accepted as true for the purposes of this motion. *See Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009).
[2] The "Fishkill Officers" refer to Defendant Correction Officers Anderson, Beroni, Charpentier, DeFreese, Dickinson, Eull, Harrington, Mathew, Michels, Morel, O'Connor, Rivera, Rolle, Salerno, Sherman, Sorensen, Yager, and John and Jane Doe officers alleged to be involved in Mr. Harrell's death.

2

claiming that Harrell died from an overdose. *Id.* ¶ 109, Ex. 1. The flier reads in pertinent part: "Just 6 short days after getting out of the SHU, [con]vict Harrell was able to get resupplied and start drugging again. On April 21, 2015, at approximately 8:30pm, this [con]vict was so stoned that he assaulted numerous officers, sending two of them to the outside hospital and a half dozen or so to the RMU. The [con]vict ended up deceased." *Id.*, Ex. 1. In addition, an unspecified group of defendants allegedly "[s]ubmit[ed] false reports, statements, and testimony" and "[lied] to authorities concerning the events." *Id.* ¶ 136.

The NYSCOPBA Defendants deny having had "any meetings with DOCCS officials or other State agencies regarding a response to the incident involving Harrell." Powers Aff. ¶ 27. They also attest that they "did not create, produce, or disseminate the flier attached to the Complaint," nor did they "assist in its creation or sanction it in any manner." *Id.* ¶ 21.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In considering a motion to dismiss, "the court is to accept as true all facts alleged in the complaint . . . [and] draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

## DISCUSSION

### I. § 1983 Conspiracy Claim

The NYSCOPBA Defendants first move to dismiss Plaintiff's § 1983 conspiracy claim. Unlike the twofold conspiracy claim against the State Defendants, related to allegations of beating and a subsequent cover-up, the conspiracy claim against the NYSCOPBA Defendants is

3

limited to the alleged cover-up. *See* Opp. at 9. To state a § 1983 conspiracy claim, a plaintiff must allege facts showing: "(1) an agreement between two or more State actors or between a State actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [§ 1983]." *Adickes v. Kress & Co.*, 398 U.S. 144, 152 (1970). Thus, where a private actor conspires with a state actor to deprive an individual of his constitutional rights, the private actor can be held liable under § 1983. *See Ciambriello*, 292 F.3d at 324.

### A. Agreement

Plaintiff has not plausibly alleged that the NYSCOPBA Defendants entered a conspiratorial agreement with the State Defendants. The Amended Complaint alleges that the NYSCOPBA Defendants "conferred" with the Fishkill Officers and received admissions of criminal behavior, without providing a time or location where this agreement took place or identifying a single participant in the meeting. AC ¶ 110.[3] Nor are there any allegations in the Amended Complaint as to precisely what the alleged conspirators agreed to do. The only allegation that is linked to a meeting of the minds states that "defendants engaged in . . . meeting and discussing information concerning the state of the investigation and present a united front in the face of any questioning." *Id.* ¶ 136(d). This allegation lacks the factual specificity required

---

[3] Plaintiff argues that she has provided a "time and place" in the Amended Complaint. Opp. at 14. The Court disagrees. The details she provides in her memorandum do not appear in the Amended Complaint. "[A] district court errs when it . . . relies on factual allegations contained in legal briefs or memoranda" in deciding a motion to dismiss. *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Rule 12(b)(6) requires courts to either "exclude the additional material and decide the motion on the complaint alone or . . . convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988). Neither party has asked the Court to convert this motion into one for summary judgment, and the Court will not consider these factual allegations raised for the first time in a brief in opposition to a motion to dismiss.

4

for the Court to reasonably infer an agreement between the NYSCOPBA Defendants and the State Defendants to cover up the cause of Harrell's death. *See Bermudez v. City of New York*, No. 11-CV-50, 2013 WL 593791, at *8 (S.D.N.Y. Feb. 14, 2013) (dismissing the plaintiff's allegations as "conclusory," where the complaint alleged that the defendants "conferred and agreed not to pursue" certain evidence, "agreed not to disclose certain information," and "actively conspired to suppress the actual events").

Plaintiff argues that a meeting of the minds is "readily apparent" from the fact that both the NYSCOPBA and State Defendants "immediately began espousing" the same story after their April 21, 2015 meeting. Opp. at 10. Yet even if the Amended Complaint had alleged such a specific meeting, parallel activity—especially of the vague sort suggested here—is insufficient to prove a conspiracy. *See Schiller v. Duthie*, No. 15-CV-4933, 2017 WL 3726993, at *18 (S.D.N.Y. Aug. 28, 2017) ("Even detailed allegations of parallel conduct do not suffice [to plead a § 1983 conspiracy] without some factual basis for inferring the existence of an agreement."). Plaintiff has not plausibly alleged a conspiratorial agreement between the NYSCOPBA Defendants and the Fishkill Officers, nor between NYSCOPBA and any other defendants.

### 2. Actual Unconstitutional Injury

In any event, the Amended Complaint does not allege an "actual deprivation of constitutional rights" resulting from the supposed cover-up. *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). First, the specific injury at issue here cannot stem from action taken against Harrell once he died based on the well-established rule that post-mortem cover-ups are not actionable conspiracies, as a deceased person does not have constitutional rights. In *Ford v. Moore*, 237 F. 3d 156 (2d Cir. 2001), for example, the Court of Appeals held that any claim of a deceased individual against defendant police officers who allegedly conspired to cover-up unconstitutional conduct against him had "extinguished" upon his death. *Id.* at 165. The Court

5

explained that "the civil rights of a person cannot be violated once that person has died," and noted that the plaintiff—the administratrix of the decedent's estate—had not alleged any claims in her capacity as administratrix. *Id.* (quoting *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 749 (10th Cir. 1980))

In this case, the Amended Complaint alleges that the NYSCOPBA Defendants conspired to deprive Harrell of his constitutional rights by covering up his death, based on conduct that took place once he had died—issuing statements and a flier regarding the cause of his death. Although an alleged conspiracy to violate a decedent's rights beginning prior to the decedent's death may be actionable, *see Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 691 (S.D.N.Y. 2004), the Amended Complaint makes clear that the NYSCOPBA Defendants' involvement in any possible conspiracy to cover-up Harrell's death did not begin until *after* Harrell had died. Moreover, Plaintiff does not make any allegations based on her capacity as administratrix of decedent's estate. *See Ford*, 237 F.3d at 165. Rather, she claims that the conspiracy to cover-up up Harrell's death "deprived Harrell of rights, privileges, and immunities secured by the Constitution and laws of the United States." AC ¶ 131.

Even if Plaintiff had properly alleged that Defendants' conspiracy to cover-up Harrell's death deprived her of a property right to be "fully compensated through a lawsuit," *Barrett v. United States*, 689 F.2d 324, 332 (2d Cir. 1982), an "access-to-courts" claim of this sort would fail nonetheless. Access-to-court claims exist "to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong[,]" *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002), such as the wrongful death of a relative. There are two variants of such claims. In a "forward-looking" access-to-courts claim, a plaintiff alleges that "official action is presently denying an opportunity to litigate." *Id.* at 413. The object of a "forward-looking" claim "is to place

6

the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* In a "backward-looking" claim—the viability of which is uncertain in this Circuit, *see Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012)—a plaintiff looks back "to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* Here, an access-to-courts claim of either type fails. Plaintiff does not seek the removal of a "frustrating condition." *Id.* Nor has Plaintiff alleged that the cover-up conspiracy prevented her from litigating his underlying claims. Indeed, she brings those very claims in this action. *See Tavares v. New York City Health & Hosps. Corp.*, No. 13-CV-3148, 2015 WL 158863, at *8 (S.D.N.Y. Jan. 13, 2015). Thus, even assuming the NYSCOPBA Defendants conspired with State Defendants to cover up the cause of Harrell's death, it would not create a reasonable inference that the cover-up denied Plaintiff access to the courts.

In sum, the Amended Complaint does not include sufficient factual allegations to make a conspiratorial agreement between the NYSCOPBA Defendants and the State Defendants plausible, nor does it include allegations of a constitutional injury caused by a cover-up conspiracy involving NYSCOPBA. For those reasons, Plaintiff's § 1983 conspiracy claim as to the NYSCOPBA Defendants is dismissed.

### B. § 1985 and § 1986 Claims

In the Third, Fourth, and Fifth Causes of Action, Plaintiff alleges that the NYSCOPBA Defendants conspired with certain State Defendants to impede the due course of justice in violation of 42 U.S.C. § 1985(2), conspired to interfere with Harrell's civil rights in violation of 42 U.S.C. § 1985(3), and neglected to prevent interference with Harrell's civil rights in violation of 42 U.S.C. § 1986, respectively. These claims are dismissed as well.

The statutes underlying these three causes of action all require the showing of a conspiracy motivated by discriminatory animus. The second clause of § 1985(2)—the only clause relevant here—provides a cause of action where "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Similarly, § 1985(3) requires a plaintiff to show "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007) (citation omitted). Finally, Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999) (citation omitted). In other words, "a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.* Thus, "[Sections] 1985 and 1986 require 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

The Court need not assess the viability of Plaintiff's underlying conspiracy claims, as she has not plausibly alleged that the NYSCOPBA Defendants' actions were motivated by "class-based, invidious discriminatory animus." *Id.* at 201–02. Plaintiff makes no factual allegations that the NYSCOPBA Defendants themselves conspired to cover up Harrell's beating due to racial animus against him, or that they made any racially derogatory comments at any time. Instead, although Plaintiff asserts that the union "kn[ew] about the 'Beat Up Squad,' including

8

their racially motivated abusive actions," *id.* ¶ 147, and "conspired to cover up these racially motivated abuses," *id.* ¶ 148, she alleges no facts to support these conclusory allegations. As Plaintiff has failed to plausibly allege discriminatory animus as required by § 1985 and §1986, the Court need not address the other elements of these claims. For this reason, the § 1985 and § 1986 claims are dismissed.

## CONCLUSION

For the foregoing reasons, NYSCOPBA's motion to dismiss is granted. The Clerk of Court is respectfully directed to remove NYSCOPBA from the caption of this case. The Clerk of Court is further directed to terminate the motion pending at docket number 204.

SO ORDERED.

Dated: August 14, 2019
New York, New York

Ronnie Abrams
United States District Judge